## Ayer & Lord Tie Company v. Teel.

(Decided March 19, 1918.)

### Appeal from Cumberland Circuit Court.

Appeal and Error—Instructions.—A reversal will follow the giving of erroneous instructions when they are prejudicial to the substantial rights of the complaining party.

P. SANDIDGE and C. C. GRASSHAM for appellant.

C. R. HICKS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On July 22, 1916, the appellee, Teel, filed this suit against the appellant, Ayer & Lord Tie Co. to recover damages on account of its alleged breach of a contract set out in the petition. The petition charged, in substance, that on July 20, 1914, the tie company was the owner of a large boundary of timber land, and on that day entered into a verbal contract with Teel by which it agreed that if he would put his mill on its premises it would furnish him sufficient timber to keep his mill in operation every day until all the timber suitable for ties had been sawed by him, at a specified price, and that he should also receive a specified price for any lumber that he might saw out of the tie trees.

He further averred that he could have sawed all the timber on the boundary of land in eight months from the date the contract was made if the logs had been furnished by the tie company in accordance with its contract; that pursuant to the contract he located his mill on the tie company's land, but that the tie company failed and refused to furnish him the logs it agreed to furnish, or any logs, except for five days; that he was

able, ready and willing to perform his contract, and that by reason of its breach by the tie company he was damaged in the sum of fifteen hundred dollars.

In its answer the tie company, after controverting the averments of the petition, and denying expressly that it made any contract with him in July, 1914, set up that in September, 1913, it being the owner of the timber land in question, made a contract with Teel by the terms of which it was agreed that Teel might move his saw-mill on the land for the purpose of sawing cross ties and doing any other sawing that might be brought to the mill; that no time was specified when Teel was to begin sawing under this contract or when the contract would terminate, nor was any agreement made as to the quantity of timber it would furnish.

It further set out that in September, 1913, Teel moved his mill to the land, and during the fall and winter of 1913 and spring and summer of 1914 he sawed for it ties and lumber under this contract, for which it paid him the agreed price.

The affirmative matter in this answer was controverted of record, and on a trial of the case there was a judgment in favor of Teel for four hundred dollars, and the tie company has filed the record in the clerk's office of this court and moved the court to grant an appeal.

It appears from the record that on May 4, 1915, Teel brought suit against the tie company to recover damages for the alleged breach of the contract made in September, 1913, to saw ties and lumber for it; that this case went to trial, and after the evidence for Teel was in, was dismissed without prejudice to avoid the effect of a peremptory instruction. It further appears that on June 23, Teel filed another suit on this 1913 contract to recover damages for an alleged breach of it, and this suit he also dismissed.

In the petition filed in May, 1915, to recover damages for the alleged breach of the contract made in September, 1913, Teel stated that under this contract the tie company was to furnish him enough timber to keep his mill running for twelve months, that is, until September, 1914; and in the second suit on the 1913 contract, filed in June, 1916, he again averred that the timber company had agreed to furnish him sufficient timber to keep his mill running every day for twelve months, or until September, 1914.

We have then this singular state of affairs; that in neither of these suits, nor in his evidence on the trial of the first one, did Teel mention the contract that is the basis of this suit, although, according to the testimony of Teel, it was made in July, 1914, and about two months before the 1913 contract had expired, and also about a year before the two suits on the alleged 1913 contract were filed by him.

We should add, however, that this awkward predicament in which Teel placed himself was no bar to the suit brought on the 1914 contract, although it would seem to weaken his evidence that a contract was made in July, 1914, especially in view of the averments in his first two suits that the contract made in September, 1913, did not expire until September, 1914, some two months after this 1914 contract was alleged to have been made.

Coming now to the instructions, it is admitted that in number one the court correctly advised the jury as to the law applicable to the case; but in instruction number two, to which the tie company objected, the court told the jury that if they believed from the evidence that the contract between the parties was made in September, 1913, and under this contract the tie company was to furnish timber to Teel's mill from time to time without regard to quantity, and that no time was specified in the contract for its beginning or termination, and "he voluntarily quit said contract," they should find for the tie company. Just why the court inserted in this instruction the words quoted, we do not quite understand, but it is very plain that under this instruction, although the jury might have believed that the contract was made in September, 1913, and not in July, 1914, and that no time was specified for its beginning or termination, they could not have found for the tie company unless they further believed that Teel voluntarily abandoned the contract.

The affirmative defense of the tie company was that the only contract it had with Teel was the contract made in September, 1913, and this theory of the case might be said to have been well submitted in instruction number two given by the court, except for the addition of the words "he voluntarily quit said contract," and under all the facts and circumstances of the case we have reached the conclusion that this instruction, on account of the insertion of these words, was prejudicial to the

substantial rights of the tie company. On another trial of the case the court should give instruction number two with these words eliminated and should also give instruction number "C" offered by the tie company.

Wherefore, the judgment is reversed, with directions for a new trial not inconsistent with this opinion.